1

2

3

4

5

6

7

8

9

10              UNITED STATES DISTRICT COURT

11             EASTERN DISTRICT OF CALIFORNIA

12

13   CINDY ABSHIRE, et al.,          No.  2:21-cv-00198-JAM-KJN

14             Plaintiffs,

15        v.                         **ORDER GRANTING STATE, COUNTY,
                                     AND TOWN DEFENDANTS' MOTIONS TO**
16   GAVIN NEWSOM, in his official   **DISMISS WITH PREJUDICE**
     capacity as Governor of
17   California, et al.,

18             Defendants.

19

20        Plaintiffs are in the business of providing short term

21   lodging and dining services in Mammoth Lakes California (Mono

22   County). In this case they challenge various State and Regional

23   Public Health Orders enacted to stop the spread of COVID-19.  See

24   generally Compl., ECF No. 1.  Plaintiffs allege these orders have

25   resulted in: (1) substantive due process violations; (2)

26   procedural due process violations; (3) equal protection

27   violations; (4) uncompensated takings; and (5) commerce clause

28   violations.  See generally id.  Plaintiffs brought this action

                              1

1    against various State, County, and Town officials.  Id.
2    Defendants now move to dismiss. [1]

3

4          I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

5          The facts of this case are familiar to the parties and will
6    not be repeated in detail here.  It involves the COVID-19
7    pandemic and the state and local governments' response thereto,
8    which has been paramount to our lives since early 2020.  On March
9    4, 2020, Governor Gavin Newsom declared a State of Emergency in
10   California due to the threat of COVID-19.  Compl. ¶ 46.  This was
11   followed on March 19, 2020 with Executive Order N-33-20, which
12   directed all residents to shelter in place except as needed to
13   maintain a continuity of operations of defined critical
14   infrastructure sectors.  Id. ¶¶ 49-50.  There has since been a
15   series of executive orders, public health orders, and guidance
16   from state and local officials to respond to the evolving nature
17   of the pandemic in California.  See id. ¶¶ 51-72.  Following the
18   State's guidance, Mono County generally mirrored the State's
19   restrictions in its own public health orders.  See id. ¶¶ 82-83,
20   85-87.

21        Relevant here, the initial public health orders issued in
22   March 2020 precluded hotels, private property owners, RV parks,
23   and other rental properties from renting out to the public,
24   except for essential workers, displaced residents needing
25   shelter, and for traveler safety.  Id. ¶¶ 83, 85, 86, 87.  In May

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28   for June 8, 2021.

2

1  2020, Mono County revised the orders to permit RV parks and
2  campgrounds to operate at 75% capacity; and then followed suit
3  for hotels and short-term rentals in June 2020.  Id. ¶¶ 92, 93.
4  On August 11, 2020, the County and Town issued an order reducing
5  capacity to 70% for hotels and short-term rentals in the Town.
6  Id. ¶¶ 94, 95; Town's Request for Judicial Notice ("Town's RJN")
7  Ex. A, ECF No. 16.

8       In August 2020, the state adopted the Blueprint for a Safer
9  Economy and its color-coded tier system.  Compl. ¶ 55.  Under
10 this system restaurants were required to: (1) cease all indoor
11 dining in the purple tier; (2) limit indoor dining to 25% in the
12 red tier; or (3) limit indoor dining capacity to 50% in the
13 orange and yellow tiers.  Id.

14      By December 2020, California experienced its biggest surge
15 of COVID-19 cases since the pandemic began.  As a result, the
16 State issued a Regional Stay-at-Home Order that imposed new
17 restrictions, with the goal of preventing a catastrophic strain
18 on the State's hospitals and, in particular, intensive care
19 units.  Under the State Regional Stay-at-Home Order, the Southern
20 California Region, which includes Mono County, was required to
21 cease all hotel and short-term rentals between December 6, 2020
22 and January 25, 2021 except for certain mitigation and
23 containment purposes.  See id. ¶¶ 97, 109; County's Request for
24 Judicial Notice ("County's RJN") Ex. 22, ECF No. 19.  After the
25 State Regional Stay-at-Home Order was lifted for the Southern
26 California region, hotels and short-term rentals were permitted
27 to reopen, subject to the same 70% capacity restrictions.  Town's
28 RJN Ex. A, B, C.  The Town's January 31, 2021 Public Health Order

also required short-term rentals be left vacant for 24 hours between occupancies.  Town's RJN, Ex. C.  This was intended to "disperse visitation to Mammoth Lakes over a longer period of time thereby avoiding overcrowding and visitor concentration during 'peak' visitation periods" and to allow time for sanitization between stays.  Id.  On February 26, 2021, the Town issued an order that removed the 70% occupancy limit but retained the 24-hour vacancy requirement.  Town's RJN, Ex. D.  On March 9, 2021, the Town rescinded all its prior Public Health Orders that imposed lodging restrictions, including the 24-hour vacancy requirement.  Town's RJN, Ex. E.

On December 9, 2020, the Town sent a letter to the local lodging community advising them of the restrictions imposed by the State and County.  Town's RJN, Ex F.  The letter also identified the potential consequences for violation of such orders pursuant to the Town's Municipal Code — fines of up to $1,000 per day and potential revocation of the violator's business tax certification for up to twelve months.  Id.  During the period that the State Regional Stay-at-Home Order was in effect for the Southern California Region, Plaintiff Cindy Abshire rented out a short-term rental in violation of the Stay-at-Home Order, resulting in the Town issuing a citation for the violation on January 21, 2021.  Compl. ¶ 112.  Similarly, the Town issued a citation for Plaintiffs Alan and Monica Butt on December 21, 2020, for violation of the Regional Stay-at-Home Order when a party was hosted at their property.  Id. ¶ 118.

On February 1, 2021 Plaintiffs filed the instant action challenging the constitutionality of the restrictions issued in

4

response to the pandemic.  In addition to the individual

Plaintiffs who were issued citations — Cindy and Timothy Abshire

and Alan and Monica Butts — Plaintiffs also include Nomadness

Corporation ("Nomadness"), a corporation that contracts with

property owners to manage, operate, and provide lodging services,

and Mammoth Lakes Business Coalition (the "Coalition"), a

membership association of dining and lodging businesses in

Mammoth Lakes.  Id. ¶¶ 19-24.  Plaintiffs assert claims against

various officials of the State, Mono County, and Town of Mammoth

Lakes for: (1) substantive due process violations; (2) procedural

due process violations; (3) equal protection violations;

(4) uncompensated takings; and (5) commerce clause violations.

See generally id.  Defendants moved to dismiss all of Plaintiffs'

claims.  State Defs.' Mot. to Dismiss, ECF No. 17 ("State's

Mot."); County Defs.' Mot. to Dismiss, ECF No. 18 ("County's

Mot."; Town Defs.' Mot. to Dismiss, ECF No. 15 ("Town's Mot.").

Plaintiffs opposed these Motions, Pls.' Opp'n, ECF No. 29, to

which Defendants responded.  State Defs.' Reply ("State's

Reply"), ECF No. 32; County Defs.' Reply ("County's Reply"), ECF

No. 33; Town Defs.' Reply ("Town Reply"), ECF No. 31.  For the

reasons set forth below, the Court finds Plaintiffs have failed

to state a plausible claim relief and therefore grants

Defendants' Motions.


                    II.   OPINION

     A.   Judicial Notice

     Defendants all request the Court take judicial notice of

various orders enacted by the State, County, and Town.  See

                              5

State's Request for Judicial Notice ("State's RJN"), ECF No. 17-2; County's Request for Judicial Notice ("County's RJN"), ECF No. 19; Town's Request for Judicial Notice ("Town's RJN"), ECF No. 16.  Additionally, State Defendants request the Court take judicial notice of the Centers for Disease Control and Prevention's COVID Data Tracker and its publicly reported data, and the State's Tracking COVID-19 in California dashboard and its publicly reported data.  State's RJN, Ex. 1, 2.  Town Defendants also request the Court take judicial notice of the transcript of this Court's own decision in Best Supplement Guide, LLC v. Newsom, No. 20-cv-00965-JAM-CKD (E.D. Cal. Oct. 27, 2020).  Town's RJN, Ex G.  Plaintiffs do not specifically oppose the requests for judicial notice but rather point out that the Court may not accept as true disputed issues of fact found therein.  Pls.' Opp'n to RJN at 1, ECF No. 30.

     As matters of public record, all the exhibits are proper subjects of judicial notice.  Accordingly, the Court GRANTS all Defendants' Request for Judicial Notice.  However, the Court takes judicial notice only of "the contents of the documents, not [the] truth of those contents."  Gish v. Newsom, No. EDCV 20-755-JGB(KKx), 2020 WL 1979970 at *2 (C.D. Cal. April 23, 2020).

     B.   12(b)(1) Motions

     A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(1).  If the plaintiff lacks standing under Article III of the United States Constitution then the court lacks subject-matter jurisdiction,

1  and the case must be dismissed.  See Maya v. Centex Corp., 658

2  F.3d 1060, 1067 (9th Cir. 2011).  Once a party has moved to

3  dismiss for lack of subject-matter jurisdiction under Rule

4  12(b)(1), the opposing party bears the burden of establishing

5  the court's jurisdiction.  See Kokkonen v. Guardian Life Ins.

6  Co., 511 U.S. 375, 377 (1994).

7            1.   Standing

8       Article III of the Constitution limits the jurisdiction of

9  federal courts to actual "Cases" and "Controversies."  U.S.

10 Const. art. III, § 2.  "One element of the case-or-controversy

11 requirement is that plaintiffs must establish that they have

12 standing to sue."  Clapper v. Amnesty Int'l USA, 568 U.S. 398,

13 408 (2013) (internal quotation marks and citation omitted).  To

14 establish standing "a plaintiff must show (1) [they have]

15 suffered an injury in fact that is (a) concrete and

16 particularized and (b) actual or imminent, not conjectural or

17 hypothetical; (2) the injury is fairly traceable to the

18 challenged action of the defendant; and (3) it is likely, as

19 opposed to merely speculative, that the injury will be redressed

20 by a favorable decision."  Friends of the Earth, Inc. v. Laidlaw

21 Envtl. Serv. Inc., 528 U.S. 167, 180-81 (2000).

22      An organization has standing to sue on behalf of its

23 members when: (1) its members would otherwise have standing to

24 sue in their own right; (2) the interests it seeks to protect

25 are germane to the organization's purpose; and (3) neither the

26 claim asserted nor the relief requested requires the

27 participation of individual members in the lawsuit.  Hunt v.

28 Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).

Plaintiff Coalition is a membership association of dining and lodging establishments in Mammoth Lakes.  Compl. ¶ 15.  In their complaint, Plaintiffs request compensatory damages in the amount of $500,000 or such other amount to be proven at trial against the County and Town Defendants.  Compl. at 55-56.  However, as the County and Town point out, that relief requires the participation of Coalition's individual members to determine what, if any, damages they have incurred.  Town Mot. at 6; County Mot. at 5.  Plaintiffs failed to address this in opposition and the Court finds that such a determination cannot be made without the individual members participation.  See Opp'n at 19.  Accordingly, Plaintiff Coalition lacks standing to seek compensatory damages.  Hunt, 432 U.S. at 343 (an organization does not have standing to sue on behalf of its members when the relief requested requires the participation of individual members in the lawsuit.)

"Even when the plaintiff has alleged an injury sufficient to meet the 'case or controversy' requirement [. . .] the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  Warth v. Seldin, 422 U.S. 490, 499 (1975).  The Supreme Court has recognized that "there may be circumstances where it is necessary to grant a third party standing to assert the rights of another" but has set forth two additional requirements.  Kowalski v. Tesmer, 543 U.S. 125, 129-30 (2004).  First, the party asserting the right must have a close relationship with the person who possesses the right.  Id. at 130.  Second, there must be some sort of

1 hinderance to the possessor's ability to protect their own

2 interest.  Id.

3     Plaintiff Nomadness is a California corporation that

4 manages, operates, and provides lodging services to customers,

5 under contract with property owners.  Compl. ¶ 23.  While the

6 orders may indirectly affect Nomadness, the rights it seeks to

7 assert are those of the property owners and businesses with

8 which it contracts.  Plaintiffs again fail to address this

9 argument, merely stating Nomadness has suffered financially as a

10 result of the orders.  Opp'n at 19.  But this is not enough to

11 assert the legal rights of third parties.  See Warth, 422 U.S.

12 at 499; Kowalski, 543 U.S. at 129-30.  Plaintiffs point to no

13 authority, and the Court is aware of none, that the contractual

14 relationship in this case is sufficient to allow Nomadness to

15 assert the legal rights of those business and property owners.

16 See Kowalski, 543 U.S. at 130.  Further, there is no indication

17 that those third parties are unable to assert their own rights.

18 Accordingly, Nomadness has failed to establish standing.[2]

19          2.   Mootness

20     "A case becomes moot—and therefore no longer a 'Case' or

21 'Controversy' for purposes of Article III—when the issues

22

23 [2] While the Town Defendants appear to raise this argument as a
12(b)(1) motion, see generally Town's Mot., the Court notes
24 prudential standing issues are decided under 12(b)(6) in this
circuit.  See Doe v. Hamburg, No. C-12-3412 EMC, 2013 WL 3783749,
25 at *5 (N.D. Cal. July 16, 2013); see also Ray Charles Foundation
v. Robinson, 759 F.3d 1109, 1118 (9th Cir. 2015) ("Historically,
26 courts have treated the limitation on third-party standing as a
prudential principle that requires plaintiffs to assert their own
27 legal rights.")  However, for clarity, the Court addresses it
28 with the other standing considerations.

1  presented are no longer 'live' or the parties lack a legally

2  cognizable interest in the outcome." Rosebrock v. Mathis, 745

3  F.3d 963, 971 (9th Cir. 2014) (internal citations omitted).

4  However, voluntary cessation of challenged conduct does not

5  necessarily render a case moot. Id. This is because "dismissal

6  for mootness would permit a resumption of the challenged conduct

7  as soon as the case is dismissed." Id. Courts presume that a

8  government entity is acting in good faith when it changes its

9  policy. Id. But courts "are less inclined to find mootness

10 where the new policy could be easily abandoned or altered in the

11 future." Id. at 972 (internal citation omitted). Finally, the

12 party asserting mootness bears a "heavy burden" to show that

13 "the challenged conduct cannot reasonably be expected to

14 reoccur." Id.

15      On June 15, 2021, the Governor rescinded the vast majority

16 of the State's COVID-19-related industry restrictions. See

17 Beyond the Blueprint for Industry and Business Sectors Effective

18 June 15, available at https://www.cdph.ca.gov/Programs/CID/DCDC

19 /Pages/COVID-19/Beyond-Blueprint-Gramework.aspx. In light of

20 this development, the Court requested supplemental briefing on

21 the issue of mootness. See Order, ECF No. 35.

22      Plaintiffs contend the case is not moot under the voluntary

23 cessation doctrine, as the uncertainty of the pandemic means

24 Plaintiffs are under the constant threat of reinstatement of the

25 prior restrictions and Defendants retain the authority to do so.

26 Pls.' Suppl. Brief at 4, ECF No. 37. Defendants however argue

27 that because of widespread vaccinations in the state "it is

28 absolutely clear the allegedly wrongful behavior could not

1    reasonably be expected to recur" rendering Plaintiffs' claims

2    for injunctive and declaratory relief moot.  State Defs.' Suppl.

3    Brief at 5-6, ECF No. 36.

4        The Court agrees with Plaintiffs that their claims for

5    injunctive and declaratory relief are not moot under the

6    voluntary cessation doctrine.  While Defendants have rescinded

7    the challenged orders "largely because of improved vaccine

8    availability and the overall decline in Covid-19 cases and

9    hospitalizations [. . .] it remains the case that the only

10   certainty about the future course of this pandemic is

11   uncertainty." Jones v. Cuomo, No. 20 CIV. 4898 (KPF), 2021 WL

12   2269551, at *5 (S.D.N.Y. June 2, 2021) (internal quotation marks

13   and citation omitted).  While vaccinations are a promising

14   development, the pandemic is not over.  New variants and vaccine

15   hesitancy make it plausible that Defendants may determine it

16   necessary to reimpose restrictions.  Accordingly, Defendants

17   have not demonstrated that "the challenged conduct cannot

18   reasonably be expected to reoccur." Rosebrock, 745 F.3d at 972.

19       C.   12(b)(6) Motions

20       A Rule 12(b)(6) motion challenges the complaint as not

21   alleging sufficient facts to state a claim for relief.  Fed. R.

22   Civ. P. 12(b)(6).  "To survive a motion to dismiss [under

23   12(b)(6)], a complaint must contain sufficient factual matter,

24   accepted as true, to state a claim for relief that is plausible

25   on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

26   (internal quotation marks and citation omitted).  While

27   "detailed factual allegations" are unnecessary, the complaint

28   must allege more than "[t]hreadbare recitals of the elements of

1  a cause of action, supported by mere conclusory statements."
2  Id.  "In sum, for a complaint to survive a motion to dismiss,
3  the non-conclusory 'factual content,' and reasonable inferences
4  from that content, must be plausibly suggestive of a claim
5  entitling the plaintiff to relief."  Moss v. U.S. Secret Serv.,
6  572 F.3d 962, 969 (9th Cir. 2009).

7        1.   Substantive Due Process Claim

8       "Substantive due process cases typically apply strict
9  scrutiny in the case of a fundamental right and rational basis
10 review in all other cases."  Witt v. Dep't of Air Force, 527
11 F.3d 806, 817 (9th Cir. 2008).  Although there is a "generalized
12 due process right to choose one's field of private employment,"
13 subject to reasonable regulations, "[t]hese cases all deal with
14 a complete prohibition of the right to engage in a calling,"
15 rather than a brief interruption in a party's ability to work.
16 Conn v. Gabbert, 526 U.S. 286, 292 (1999).  Neither the Supreme
17 Court nor the Ninth Circuit has ever recognized the right to
18 work or pursue a business enterprise as a fundamental right
19 warranting higher scrutiny.  Saga v. Tenorio, 384 F.3d 731, 743
20 (9th Cir. 2004) ("the Court has never held that the right to
21 pursue work is a fundamental right"); see also Slidewaters LLC
22 v. Washington State Dep't of Lab. & Indus., 2021 WL 2836630 at
23 *7 (9th Cir. 2021) (instructing "the right to pursue a common
24 calling is not considered a fundamental right" and the "proper
25 test for judging the constitutionality of statutes regulating
26 economic activity is whether the legislation bears a rational
27 relationship to a legitimate state interest.")
28      To the extent Plaintiffs argue that the orders implicate

the right to interstate travel, Pls.' Opp'n at 6-8, they are precluded from asserting the rights of their out-of-state guests.  <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975) ("plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.")  Further, neither the Supreme Court nor the Ninth Circuit has recognized a constitutional right to intrastate travel.  <u>Best Supplement Guide, LLC v. Newsom</u>, 20-cv-00965-JAM-CKD, 2020 WL 2615022, at *5 (E.D. Cal. May 22, 2020).  Because the orders do not implicate a fundamental right, they are constitutional so long as they are rationally related to a legitimate governmental interest.

It is uncontroverted that "[t]here is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease."  <u>Slidewaters LLC</u>, 2021 WL 2836630 at *7; <u>see also</u> <u>Roman Cath. Diocese of Brooklyn v. Cuomo</u>, 141 S.Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest.")  The remaining issue then is whether Defendants' actions are rationally related to this interest.  The Court finds the challenged orders meet the requirements of rational basis review as a matter of law.

Restrictions on lodgings, hotels, and short-term rentals are rationally related to the goal of limiting the spread of COVID-19.  Defendants, in enacting these restrictions, considered the ability to physically distance between individuals from different households.  State's RJN, Ex. 3.  Lodgings and hotels, by their nature, tend to host people from

1   multiple households and from different communities.  Mixing of

2   different households increases the chance of the virus spreading

3   because each person infected at a hotel or lodging would bring

4   the virus back to their household and community.  State's Mot.

5   at 7.  It is therefore rational for the State to require

6   lodgings, hotels, and short-term rentals to take measures to

7   help prevent or slow the spread of COVID-19.

8        Restrictions on restaurants are also rational as eating and

9   drinking requires the removal of masks, making transmission more

10  likely.  Id.  Additionally, as with lodgings, restaurants tend

11  to host people from numerous households for an extended period

12  of time, creating the risk that one sick person will spread the

13  disease to multiple households.

14       Plaintiffs' substantive due process claim thus fails as a

15  matter of law. Because no additional fact discovery would alter

16  this conclusion, Plaintiffs' first claim is dismissed with

17  prejudice. See Deveraturda v. Globe Aviation Sec. Servs. 454 F.

18  3d 1043, 1046 (9th Cir. 2006 (explaining a district court need

19  not grant leave to amend where amendment would be futile).

20                    2.   Procedural Due Process Claim

21       When the action complained of is legislative in nature —

22  government decisions that affect large areas and are not

23  directed at one or a few individuals — the constitutional

24  procedural due process requirements of individual notice and

25  hearing are not implicated.  Halverson v. Skagit Cty., 42 F.3d

26  1257, 1260-61 (9th Cir. 1994), as amended on denial of reh'g

27  (Feb. 9. 1995).  "General notice as provided by law is

28  sufficient."  Id.

1    Here, the orders in question are ones of general

2  applicability affecting the entire State, County, and Town.

3  They are not directed at one or a few individuals.  Accordingly,

4  general notice as provided by law was sufficient and Plaintiffs

5  have failed to state a claim for a procedural due process

6  violation.[3]  Id.  The Court further finds that amendment would be

7  futile and dismisses this claim with prejudice.  See Deveraturda,

8  454 F.3d. at 1046.

9          3.  Equal Protection Claim

10    Under the Equal Protection Clause, "[w]hen no suspect class

11 is involved and no fundamental right is burdened, [courts] apply

12 a rational basis test to determine the legitimacy of the

13 classification."  Kahawaiolaa v. Norton, 386 F.3d 1271, 1277-78

14 (9th Cir. 2004).

15    As discussed above, the orders at issue do not burden a

16 fundamental right.  Nor are the owners of hotels, lodgings,

17 short-term rentals, and restaurants a suspect class.

18 Accordingly, rational basis applies.  For the same reasons set

19 forth above, the Court finds the orders are rationally related

20 to Defendants' legitimate interest in reducing the spread of

21 COVID-19.  Even if, as Plaintiffs contend, non-essential lodging

22 was prohibited while other non-essential, equally risky business

23 was allowed, the orders still survive rational basis review.

24 Opp'n at 14 (citing Compl. ¶ 136).  Defendants are "not required

25 to draw a perfect line in determining which individual business

26

27 [3] Plaintiffs' argument that the orders failed to comply with
   California law, Opp'n at 15, is precluded under Pennhurst.  See
   Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106

28 (1984).

can safely open and which cannot." Slidewaters LLC, 2021 WL 2836630 at *8.  This claim is also dismissed with prejudice as the Court finds amendment would be futile. See Deveraturda, 454 F.3d at 1046.

### 4.   Takings Claim

"The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth, provides that private property shall not be taken without just compensation." Lingle v. Chevron U.S.A Inc., 544 U.S. 528, 536 (2005).  The Supreme Court has "recognized that government regulation of private property may in some instances, be so onerous" that it amounts to a taking.  Id.  at 537.  A regulation constitutes an unconstitutional taking when: (1) it requires an owner to suffer a permanent physical invasion of its property; (2) it completely deprives an owner of all economically beneficial use of its property; or (3) upon evaluation of the factors set forth in Penn Central it is deemed to be an impermissible invasion of the owners property rights.  Id. at 538.  Under Penn Central, to determine whether a regulation constitutes a taking courts consider: (1) the economic impact on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.  Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 125 (1978).

Plaintiffs argue that under the Penn Central factors, the orders have amounted to a taking because they have reduced Plaintiffs' profits and their investment-backed expectations that they would be able to use the property for short term

1   lodging and dining.  Opp'n at 17.  Plaintiffs also argue that

2   the character of the regulation weighs in favor of finding a

3   taking since they were not implemented through the legislative

4   process.  Id.

5       But, as the Court explained in Penn Central, the relevant

6   inquiry is whether the government interference can be

7   characterized as a physical invasion rather than an

8   "interference aris[ing] from some public program adjusting the

9   benefits and burdens of economic life to promote the common

10  good."  Penn Cent., 438 U.S. at 124.  "A 'taking' may more

11  readily be found when the interference with property can be

12  characterized as a physical invasion by the government."  Id.

13  The Court did not suggest, as Plaintiffs do here, that the

14  characterization of the action as executive rather than

15  legislative is relevant to the takings analysis.

16      Further, where a state has "reasonably concluded that 'the

17  health, safety, morals, or general welfare' would be promoted by

18  prohibiting particular contemplated uses of land, [the Supreme]

19  Court has upheld land-use regulations that destroyed or

20  adversely affected recognized real property interests."  Penn

21  Cent., 438 U.S. at 125.  For example, Mugler v. Kansas involved

22  a challenge to Kansas' restrictions on the sale of alcohol.  123

23  U.S. 623, 659-60 (1887).  Challengers, brewery businesses,

24  argued that the prohibition interfered with their investment-

25  backed expectation when they bought the property that they could

26  use it as a brewery.  Id. at 664.  The Supreme Court, however,

27  rejected their argument that this amounted to a taking requiring

28  compensation.  Id.  Key to the Court's ruling was that the State

1  had determined the sale of alcohol to be detrimental to public

2  health.  Id. at 668-69.  The Court noted that:

3      A prohibition simply upon the use of property for
       purposes that are declared, by valid legislation, to
4      be injurious to the health, morals, or safety of the
       community, cannot, in any just sense, be deemed a
5      taking or an appropriation of property for the public
       benefit.  Such legislation does not disturb the owner
6      in the control or use of his property for lawful
       purposes, nor restrict his right to dispose of it, but
7      is only declared by the state that its use by anyone,
       for certain forbidden purposes, is prejudicial to the
8      public interest.

9  Id.  While Mugler was decided pre-Penn Central, it is

10 instructive on how general prohibitions on the use of land to

11 protect public health should be considered under the factors

12 today.  Plaintiffs here, short-term lodging and restaurant

13 businesses, argue, as the challengers did in Mugler, that the

14 orders interfered with their investment-backed expectations that

15 they could use their property as such.  Opp'n at 17.  But like

16 in Mugler, that the government forbade certain property uses it

17 determined to be injurious to public health does not constitute

18 a taking.  Plaintiffs were still able to use their property for

19 lawful purposes or dispose of it.  Further, under the orders,

20 Plaintiffs were not prohibited from operating their businesses

21 entirely but rather were subject to certain restrictions.

22 States' Mot. at 9.  While Plaintiffs may have lost profits as a

23 result, this does not amount to a taking.  See PCG-SP Venture I

24 LLC v. Newsom, No. EDCV201138JGBKKX, 2020 WL 4344631, at *10

25 (C.D. Cal. June 23, 2020) ("To the extent the Orders temporarily

26 deprive Plaintiffs of the use and benefit of its hotel, the

27 Takings Clause is indifferent.  The State is entitled to

28 prioritize the health of the public over the property rights of

1    the individual.") Thus, this claim is dismissed with prejudice

2    because the Court finds amendment would be futile. See

3    Deveraturda, 454 F.3d at 1046.

4              5.    Dormant Commerce Clause Claim

5         "Although the Commerce Clause is by its text an affirmative

6    grant of power to Congress to regulate interstate and foreign

7    commerce, the Clause has long been recognized as a self-

8    executing limitation on the power of the States to enact laws

9    imposing substantial burdens on such commerce." Nat'l Ass'n of

10   Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th

11   Cir. 2012) (quoting South-Centr. Timber Dev., Inc. v. Wunnicke,

12   467 U.S. 82, 87 (1984)).  This limitation on the states to

13   regulate commerce is "known as the dormant Commerce Clause."

14   Id.  The primary purpose of the dormant Commerce Clause is to

15   prohibit "statutes that discriminate against interstate

16   commerce" by providing benefits to "in-state economic interests"

17   while "burdening out-of-state competitors."  Id. at 1148

18   (internal quotation marks and citations omitted).

19        "If a statute discriminates against out-of-state entities

20   on its face, in its purpose, or in its practical effect, it is

21   unconstitutional unless it 'serves a legitimate local purpose,

22   and this purpose could not be served as well by available

23   nondiscriminatory means.'"  Rocky Mountain Farmers Union v.

24   Corey, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting Maine v.

25   Taylor, 477 U.S. 131, 138 (1986)).  "Absent discrimination, [the

26   Court] will uphold the law 'unless the burden imposed on

27   [interstate] commerce is clearly excessive in relation to the

28   putative local benefits.'"  Id. at 1087-88 (quoting Pike v.

19

1  Bruce Church, Inc._, 397 U.S. 137, 142 (1970)).  "The party

2  challenging the statute bears the burden of showing

3  discrimination."  _Black Star Farms, LLC v. Oliver_, 600 F.3d

4  1225, 1230 (9th Cir. 2010).

5       Here, the orders are facially neutral, as they apply to

6  lodgings and restaurants regardless of their ties to interstate

7  commerce.  _See Int'l Franchise Ass'n, Inc. v. City of Seattle_,

8  803 F.3d 389, 400 (9th Cir. 2015).  Nor is there any indication

9  that the purpose of the orders is to discriminate rather than

10  advance the legitimate objective of curbing the spread of COVID-

11  19.  _Rocky Mountain Farmers Union_, 730 F.3d at 1097-98 ("The

12  party challenging a regulation bears the burden of establishing

13  that a challenged statute has a discriminatory purpose or effect

14  under the Commerce Clause.  We will assume that the objectives

15  articulated by the legislature are actual purposes of the

16  statute, unless an examination of the circumstances forces us to

17  conclude that they could not have been a goal of the

18  legislation.")  And any incidental effect on interstate commerce

19  is not substantially outweighed by the local benefits of

20  reducing the spread of COVID-19, a contagious and deadly

21  disease.  _See Chinatown Neighborhood Ass'n v. Harris_, 794 F.3d

22  1136, 1146-47 (9th Cir. 2015) (finding no significant

23  interference with interstate commerce when the regulation

24  addressed legitimate matters of local concern and did not

25  involve the regulation of activities that were inherently

26  national or require a uniform system of regulation); _see also_

27  _Hopkins Hawley LLC v. Cuomo_, No. 20-CV-10932 (PAC), 2021 WL

28  465437, at *8 (S.D.N.Y. Feb. 9, 2021) ("even assuming that the

Dining Policy has imposed incidental burdens on interstate
commerce—for example, on out-of-state restaurant suppliers or
interstate travelers—the Plaintiffs have not shown that these
burdens are 'incommensurate' with the local benefit of
mitigating further transmission of the COVID-19 virus.")
Accordingly, Plaintiffs have failed to state a plausible dormant
Commerce Clause claim and Defendants' motion to dismiss this
final claim is granted with prejudice, as the Court finds that
amendment would be futile. See Deveraturda, 454 F.3d at 1046.

                        III.   ORDER

     For the reasons set forth above, the Court GRANTS
Defendants' Motions to Dismiss all claims against them WITH
PREJUDICE.

     IT IS SO ORDERED.

Dated: August 4, 2021

                                   _____
                                   JOHN A. MENDEZ,
                                   UNITED STATES DISTRICT JUDGE